Paul Moushigian v. John Marderosian et al. Hi, good morning. May it please the court. My name is Bruce Mattson. I'm here on behalf of the appellant Paul Moushigian. I'd like to reserve the court's indulgence two minutes for rebuttal. Yes.  In addition to responding to any questions the court may have today about this matter, I'd like to spend most of my time talking about four words. And those four words, of course, were the ruling that the U.S. Bankruptcy Court made, the substantive motion that has brought us here today. Mr. Moushigian had a claim against certain individuals for fraud and embezzlement. He instituted litigation in the state court in Massachusetts. And that matter proceeded for almost 18 months, including substantial discovery, including depositions, including deposition where one of the debtors took the fifth. When that matter was pressed further for trial, the debtors sought bankruptcy relief. Knowing that it was both efficient and necessary to pursue their claim in the bankruptcy court, the appellant filed a motion asking for relief from stay and asking that the deadline for pursuing complaints to determine the discharge of related debt under Section 523A be extended. And in particular, I think very important, the relief requested included the following prayer. In response, the bankruptcy court typed on the margin of the pleading, Relief from stay granted. So there's four issues I'd like to address relating to those four words. First, we need to look at what was the ruling? What was the substance? What did the judge mean by those four words? I believe, as we've argued in our brief and we've argued below, that the court was granting the relief requested. The appellant, of course, wants to slice that very thinly and suggest that somehow in typing those four words, the court was granting some of the relief but not other of the relief requested in the motion. But that makes no sense as it relates to what was requested and what bankruptcy law provides. If, in fact, that interpretation is correct, and of course, I don't want to ignore the fact that four months later, the bankruptcy court did interpret those four words in a manner adverse to my client. Yes, and that seems to me that that's an obstacle that you're really going to have to deal with. I would like to suggest something, and perhaps you could tell me where I'm wrong so that you can get back to your argument. Certainly. The four words, I find it very hard to accept that those four words would be read by any reasonable person, by all reasonable persons, let me put it that way, to have provided full relief. It seems to me that the words are at least ambiguous in that sense if they're not clear the other way. And if that's the case, if we were to see them as ambiguous at best, ordinarily, and here's my question, wouldn't we, in fact, I think we would, but wouldn't we send this back to the bankruptcy judge for clarification about what he meant? I think we have cases that say that, and yet here, that's already been done. The bankruptcy judge has already said what he meant. So what's wrong with that? Certainly. I think that's fair. At best, it's ambiguous. Arguably, it's ambiguous. I do think that if we interpret it at the time it was ruled the way the judge four months later said what he meant, it would have been a useless act. It would have been futile because he was giving my client the right to go pursue litigation, which was going to become moot within three or four weeks. That makes no sense, and that's not what was requested. But to get to your question, Rule 52, as incorporated by Bankruptcy Rule 7052, says pretty clearly that the bankruptcy judge is required to enter an order and separate statement of findings of facts and conclusions of law. The court failed to do that in this situation. Now, if this went back, if the court had done that at that time, my client timely would have understood that the court wasn't ruling on the relief that it requested, and that my client believed, and I think very reasonably believed, had been granted. Keep in mind, the debtor in this case never opposed the requested relief. Can I ask a question? Certainly. Before the four words were issued on the order, the same bankruptcy judge had denied the expedited motion, and in the bankruptcy court's decision, the bankruptcy judge made clear any extension of the 523 deadline had to be by separate motion. So, in other words, denying the expedited request before ultimately granting it with the four-word order, the judge puts your client on notice, 523 extension has to be done by a separate motion. I understand. And clearly the toughest fact for me in this case. But two weeks later, the judge granted our motion. Now, my opponent will say, didn't grant the motion, granted relief from the state. What does that mean in this context with this relief that's being requested? It's unclear. Your Honor said, maybe at best it's ambiguous. But if the court had done what it's required to do, it's required to do under Rule 52 as incorporated, if it had done that, we would have seen what the ruling was. We would have understood that the judge is actually parsing out the relief. Mr. Mattson, you're losing me there because bankruptcy judges, I mean, my guess is today there's probably 300 orders being signed in bankruptcy courts around this country that say motion denied, motion granted, motion for X denied. I mean, bankruptcy judges are not required on ruling on motions of this type to state their reasons in the absence of a request to do so. A couple of observations. One is I'm actually very involved in the bankruptcy process, and actually there are most motions for relief have with them orders. And my experience is that most judges put their ruling on the record or it's incorporated in the order. But now we have not been able to find that the First Circuit has ruled on this, but the Second Circuit has said very clearly that Rule 52 is incorporated by Rule 72 and 9014, and it does apply for motions for relief. And the point, though, is if we were advised of the ruling, we would have acted appropriately. There's plenty of evidence in the record to show that when there was knowledge of a deadline, something had happened, we filed pleadings and we made requests, and it was only after the discharge had been granted and we got clarification that we were now out of luck. Thank you. You've reserved some time. Good morning, Your Honor. Please, the Court. I'm Henry Ellis, and I represent the appellees, John and Elizabeth Meyer-Rosling. The questions you've asked the appellant are basically what I was going to argue. He puts emphasis on procedure that the Court said, this is all you get. You get relief from state. Yes, he got relief from state for whatever reasons he wanted to proceed in superior court. However, he ignores the rest of the orders that were issued on the August 21, 2012 order, where the Court just expressly said to him, if you wish to file an objection to discharge, you must do it by September 27, 2012. If you need more time, considering that he's in superior court, come back to me. Ask for a motion to extend. He did neither. If he was confused, he should have filed a motion for clarification or some other appropriate motion. But if you actually look at his brief, he wasn't confused. He knew the deadlines. The original deadline was August 6, 2012. He filed a motion to extend it. The Court gave him his extension to September 27. Are you suggesting that the record supports even a suggestion that they intentionally blew the deadline? Pardon me? Are you suggesting that counsel intentionally blew the deadline? No, I'm suggesting that the deadline was simply missed by the appellant. Isn't it pretty clear here that when they read relief from state granted, they just assumed that it must have been not just the stay, but the related relief that they'd already asked for, even though it doesn't say that, so they thought they were protected. I agree with you, Judge Geisler, except for the fact that the Court issued a separate order saying, do this by this date. If you need more time, I'll give it to you. They missed the deadline. Despite his argument to the contrary, if you look at the United States District Court judge's comment, rules of procedure are not meaningless, and litigants ignore them at their peril. Misakien was obligated to comply with them in order to exercise his rights, and neglected to do so. Well, that's certainly all correct, but then what do you do? Let's assume they did goof up here. What reason was there for the Court in its discretion not to relieve them from that stay? On the motion for reconsideration? Yes. The Court had no authority under Rule 4004B, and he mentions 4004B in his decision. Now, 4004B was amended in 2011 to add, a motion to extend the time to object to discharge may be filed after the time for objection has expired and before discharge is granted. One, the appellant hasn't pleaded this new section of the 2011 amendment, but even if he had, he'd have to show new facts equivalent to what's required under 11 U.S.C.S. 727D, which is basically that a discharge was obtained through fraud or the debtor had property that he didn't disclose. Those are the main ones under 727D, and a trustee basically, when I was a trustee, had two years to do that. That gave us time to see what happened afterwards in the case, but there are no new facts that he can even look to the amendments of 2011. I don't know if that answers your question. But again, going back, he did miss a deadline, and that's all this case is about. I'll rest on my brief unless you have some further questions. Thank you. Thank you, Your Honors. Just a follow-up. I think based on our discussion this morning, a critical issue for you may become this issue about Rule 7052. And I apologize it's not in our brief. I made reference to the Second Circuit. There is a Second Circuit opinion. I'm happy to give it to Your Honors and your clerks and share it with my opposing counsel. There's also an unreported decision from the Tenth Circuit. So you file what's called the Rule 28J letter, giving us the citation. Thank you very much, Your Honor. But the critical point is I think if you decide, and this is an opportunity, I believe, for the First Circuit to rule on this, where it hasn't been ruled on, but if you follow the logic, it's almost like a mathematical equation. When you move from 4001 to 9014 to 7052 and to 52, there was this requirement. And when you think through, if we had gotten a reported opinion, we would have understood the ruling. We would have acted promptly. The record is full of examples of where we did act when we understood there were things to do. And if we'd done that, it's rather crystal clear that we would have filed the necessary papers. And I want to close by thinking about the policy here. The policy is to give debtors a prompt, broad discharge, but not all debtors and not all debts. Congress has made it clear that there are certain obligations that should survive the discharge, things like taxes and student loans, but also discharges are for honest debtors. And very specifically, Congress has said that when you have fraud, embezzlement, fraud in a fiduciary capacity, those are the type of debts that we don't think should be discharged. Mr. Mshugin should get an opportunity to have his day in court and show that this obligation was one that fits very squarely in that. And it doesn't frustrate bankruptcy policy. In fact, it promotes bankruptcy policy. And unusual and a lot of times in bankruptcy cases where mootness prevents relief being given, this case is still one where justice can be done, relief can be given. Thank you very much.